UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
RAMIEK SMALLS,

                    Petitioner,

                                        MEMORANDUM AND ORDER
        -against-                       19-CV-1818(JS)

JAMIE LAMANNA,

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Ramiek Smalls, Pro Se
                    #13-A-0784
                    Green Haven Correctional Facility
                    P.O. Box 4000
                    Stormville, New York 12582

For Respondent:     Donald J. Berk, Esq.
                    Nassau County District Attorney's Office
                    240 Old Country Road
                    Mineola, New York 11501

SEYBERT, District Judge:

        Pending before the Court is the pro se petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereafter, the
"Petition") of Petitioner Ramiek Smalls ("Petitioner").   (See
Petition, ECF No. 1.)  Following a state court jury trial,
Petitioner was convicted of: one count of New York Penal Law §
125.25(1), Murder in the Second Degree; one count of New York Penal
Law § 265.03(3), Criminal Possession of a Weapon in the Second
Degree; and one count of New York Penal Law § 120.05(2), Assault
in the Second Degree.  Now seeking habeas relief, Petitioner raises
six claims that he contends warrants habeas relief. (See Petition,

ECF No. 1, at ECF pp. 6-21; <u>see also</u> <u>infra</u> Discussion, Part II, at 15)  Respondent Jamie LaManna ("Respondent") opposes the Petition. (<u>See</u> Opp'n, ECF No. 10.[1])  For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

I.   <u>The Offense Conduct</u>

Petitioner was a member of a gang called Thugged Out Players ("TOP").  He believed a rival gang member, Lawrence Hartman ("Hartman"), was responsible for a June 2010 shooting at Petitioner's residence.  (Tr. 785:4-86:3; 1176:18-79:5; 1339:13-1340:12.)  In retaliation, in late May 2011, Petitioner and fellow TOP members, including Petitioner's co-defendant Richard Paul ("Paul"), as well as Robert Hester ("Hester") and Michael Toney ("Toney"), plotted to kill Hartman.  (Tr. 759:10-763:17; 779:17-782:25.)  Their plan was to confront Hartman at a Hempstead, New York nightclub (the "Club") where Hartman, a disc jockey, was scheduled to perform.  (Tr. 761:15-762:11.)  In accordance with their plan, on May 31, 2011, Petitioner shot and killed Hartman during an altercation outside of the Club; during the shooting,

---

[1] Although given the opportunity to do so, Petitioner did not file a reply.  (<u>See</u> Aug. 19, 2019 Order to Show Cause, ECF No. 5 ¶7 ("Petitioner, within 20 days of receipt by him of a copy of the return, shall file a reply, if any, with the clerk of this Court."); <u>see also</u> Sept. 18, 2020 Electronic Order granting extension of time to file Reply; <u>cf.</u> Case Docket, <u>in toto</u>.) Accordingly, the Court deems the Petition fully briefed.

Petitioner also shot and injured an innocent bystander, Christen Bradley ("Bradley").  The bullet that hit Bradley permanently scarred Bradley's leg.  (Tr. 804:7-9.)

II.  The Trial

Petitioner's trial began on September 11, 2012 before the Honorable Norman St. George.  Prior to jury selection, the trial court conducted a Molineux hearing regarding any prior crimes or bad acts committed by Petitioner.  (Tr. 60:9-88:21.)  During that hearing, the prosecution made an application to introduce evidence of Petitioner's gang affiliation, and 26 instances of uncharged gang activity, retaliation, and witness intimidation. (See generally id.)  The Molineux application was granted in part, with the prosecution allowed to elicit the following evidence: (1) Petitioner's gang affiliation; (2) efforts by Petitioner and his agents to intimidate three witnesses on four separate dates; (3) allegations of uncharged crimes from May 2010, June 3, 2010, and March 13, 2011 that demonstrated motive; and (4) conversations at TOP meetings both before and after Hartman's murder.  (Nov. 5, 2012 Decision & Order, ECF No. 10-5.)  The trial court also permitted testimony from an expert witness regarding the "general workings of a gang and the hesitance of civilian witnesses to testify about gangs out of fear of punishment or retaliation from gang members."  (Id. at (unnumbered) 2.)

Later, during jury selection, defense counsel raised a Batson challenge, after which the following colloquy ensued:

THE COURT:     People peremptory challenges?

MS. LEWIS:[2]  Yes, number five, Ms. Flores.

THE COURT:     Georgia Flores is struck peremptorily by the People. Anything further, Ms. Lewis?

MS. LEWIS:     Not for four, thank you.

THE COURT:     Mr. Lemke?

MR. LEMKE:     Your honor, I am going to raise a Batson issue. Yesterday's round all three African-Americans had been challenged by Ms. Lewis. She is the only one sitting in the first seven. I would ask for a basis for her challenging Ms. Flores.

THE COURT:     Who was the last juror you peremptorily challenged?

MS. LEWIS:     Ms. Flores.

THE COURT:     State a nondiscriminatory reason for her challenge?

MS. LEWIS:     Your Honor, the issue with the spousal abuse and no arrest being made years ago, I thought it would make her too emotional. She opted not to call the police.

And there is an African-American woman seated as a juror in this case.

_____

[2] Ms. Lewis was the prosecutor; Mr. Lemke was defense counsel.

> THE COURT:      Just for the record, it is the
>                 Court's understanding that Ms.
>                 Flores is of Hispanic decent.
>                 Mr. Lemke, do you have a
>                 different view?
>
> MR. LEMKE:      Well, I'm not going to make an
>                 issue out of it, but I did have
>                 a different view.
>
> THE COURT:      Very well.   The Batson
>                 challenge is denied.  The Court
>                 finds the People have
>                 indicated a nondiscriminatory
>                 reason for challenging Ms.
>                 Flores.

(Tr. 426:19-427:25.)  Defense counsel did not further object; the challenges continued with the remainder of the jury panel.

At trial, the prosecution presented testimony from law enforcement witnesses, eyewitnesses, including Bradley and Hester, as well as audio recordings.

In accordance with the trial court's <u>Molineux</u> decision, the prosecution presented Hester and Toney, who each testified to the TOP meetings both before the shooting where Hartman's murder was planned (Tr. 759:10-763:17) and after Petitioner had carried it out (Tr. 763:18-765:22).  Hester, an eyewitness to the Hartman murder, also testified that after the murder, on March 14, 2012, Petitioner's brother, Isaiah Smalls, and a companion shot at Hester while calling him a "snitch" and a "rat."  (Tr. 767:9-769:4; 1189:15-1198:21; 1253:7-1258:17.)

The prosecution offered two additional instances of witness intimidation, evincing Petitioner's consciousness of guilt. The first instance was a recorded jail call between Petitioner and a female, wherein Petitioner discussed that a woman named Nicole gave a statement to police and stated he was going to direct his brothers to rough her up. (Tr. 1355:12-1357:10.) The second instance involved the activation of a caper alarm[3] at the home of Nicole Jones ("Jones"), who did not testify at Petitioner's trial. However, a Detective Nill ("Nill") did, explaining that a caper alarm was installed at Jones's residence, which was activated on May 3, 2012 and to which he responded. (Tr. 1168:14-16; 1170:1-8.) Nill further testified that, based upon his conversation with Jones,[4] he conducted an investigation seeking an individual described as a black male wearing a dark hoodie, with a purple scarf over his face. (Tr. 1170:16-1171:10.) Although Nill did not find anyone at Jones's residence, he found milk crates had

---

[3] A caper alarm is an electronic device with a police radio built into it. (Tr. 1169:9-10.) Typically, a caper alarm is installed in instances where crime victims or others request the alarm for their protection. (Tr. 1169:10-12.) The alarm comes with a key, and if the individual feels threatened or unsafe, the person can activate the alarm by hitting a button on the key which calls 911 and automatically dispatches a police car to the location. (Tr. 1169:12-17.)

[4] Detective Nill did not testify to the content of his conversation with Jones, but that after speaking with her, he conducted an investigation of her residence. (Tr. 1170:11-15.)

been stacked up under a window, which crates had not previously been there. (Tr. 1172:8-15.)

At the conclusion of the prosecution's case, defense counsel moved for an order of dismissal for failure to prove a prima facie case; the trial court denied the dismissal motion. (See Tr. 1407:22-1411:7.) Thereafter, defense counsel proceeded presenting testimony from one witness, Leonard Cannon ("Cannon"). Cannon testified that: he went to see Hartman perform at the Club on May 31, 2011 (Tr. 1442:6-20); he was in the Club's parking lot and saw an altercation and a shooting, but Petitioner was not the shooter (Tr. 1443:2-8); and he saw someone with a gun, but that person was not Petitioner or Paul. (Tr. 1445:10-24.) Cannon further testified that after he had been arrested for burglary, he met with a Detective Ross on August 15, 2011, and gave a statement regarding Hartman's murder in the hopes of getting leniency in his own criminal case. (Tr. 1440:20-24; 1448:19-1449:10.) After defense counsel rested, the prosecution called Detective Ross as a rebuttal witness. (Tr. 1500:13-16.) The Detective testified that Cannon had identified Paul as the shooter, but failed to identify anyone from photo arrays including Toney or Petitioner. (Tr. 1501:12-1505:1.)

Thereafter, closing arguments were made, and then the trial court charged the jury on the law. After deliberating, the jury convicted Petitioner of Murder in the Second Degree, Assault

in the Second Degree, and Criminal Possession of a Weapon in the Second Degree. (See Tr. 1663:8-17.)

III.   The Sentence

On April 1, 2014, Petitioner was sentenced. (See Sent'g Tr., ECF No. 10-12.)   The prosecution requested the maximum sentence permissible under the law. (Sent'g Tr. 3:7-4:19.)   In opposition, defense counsel advocated for leniency in sentencing and requested concurrent sentences instead of consecutive ones, explaining that Petitioner maintained his innocence and was a young man, i.e., 24-years-old. (Sent'g Tr. 6:18-19.)   Speaking on his own behalf, Petitioner maintained his innocence and insisted he was wrongly convicted. (Sent'g Tr. 10:8-11:1.)   The trial court sentenced Petitioner to: 25-years-to-life imprisonment on the Murder in the Second Degree count, New York Penal Law § 125.25(1); seven years' imprisonment with three years' post-release supervision on the Assault in the Second Degree count, New York Penal Law § 120.05(2); and 15-years' imprisonment with five years' post-release supervision on the Criminal Possession of a Weapon in the Second Degree count, New York Penal Law § 265.03(3), with all sentences to run consecutively. (Sent'g Tr. 11:10-12:2.)

IV.   The Appeal

In May 2015 and through counsel, Petitioner appealed his conviction and sentence to the Second Department. (See Appellant Br., ECF No. 10-13.)   Petitioner raised ten claims, including that:

8

(1) the trial court denied his right to a fair trial by denying his Batson challenge during jury selection (see id. at 58-62); (2) the trial court's Molineux ruling denied him his right to a fair trial (see id. at 62-68); (3) the trial denied his right to a fair trial by closing the courtroom during jury selection (see id. at 68-70); (4) the trial court permitted testimony that violated the Confrontation Clause (see id. at 73-76); (5) his sentence was excessive (see id. at 82-86); and (6) trial counsel was ineffective (see id. at 86-87).

The Second Department affirmed the judgment finding: as to Petitioner's Molineux argument, the trial court's ruling was a "provident exercise of discretion" and the evidence in question was "admissible as relevant background material to explain to the jury the sequence of events and the relationship between the defendant and the decedent, and as evidence of the defendant's motive and intent, and his consciousness of guilt;" as to Petitioner's harsh-sentence argument, that "the imposition of consecutive sentences was not illegal, as the evidence established that the two victims were shot by separate bullets, and therefore, their deaths were the result of separate and distinct acts" and the sentence imposed was not excessive; and, as to Petitioner's ineffective assistance of counsel claim, that claim was without merit. People v. Smalls, 145 A.D.3d 802, 802-03, 43 N.Y.S.3d 123

(2d Dep't 2016).[5]  As to Petitioner's <u>Batson</u>, improper courtroom closure, and Confrontation Clause claims, the Second Department found those contentions were unpreserved for appellate review and declined to review them.  <u>Id.</u> at 803.  Petitioner sought leave to appeal to the New York State Court of Appeals, which was denied on March 6, 2017.  <u>See</u> <u>People v. Smalls</u>, 29 N.Y.3d 952, 76 N.E.3d 1086, 54 N.Y.S.3d 383 (2017).[6]

V.  <u>Petitioner's Section 440 Motion</u>

On January 24, 2018, Petitioner moved the trial court, pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, to vacate his judgment of conviction.  (<u>See</u> Section 440 Motion, ECF No. 10-20.)  Petitioner argued that defense counsel was ineffective for failure to advise Petitioner that he could receive consecutive terms of imprisonment if convicted on more than one count.  (<u>See</u> <u>id.</u> at 2-16.)  He further argued that, but for counsel's ineffective assistance, he would have accepted the prosecution's pre-trial plea offer of 20-years' imprisonment. (<u>See</u> <u>id.</u>)

In a June 18, 2018 Decision & Order, the trial court denied Petitioner's Section 440 Motion in its entirety (hereafter, the "Section 440 Denial Order").  (<u>See</u> ECF No. 10-23.)  The state

---

[5]  Also docketed in the instant case at ECF No. 10-15.

[6]  Also docketed in the instant case at ECF No. 10-19.

court found incredible Petitioner's claim that defense counsel failed to advise him of his sentencing exposure to consecutive sentences. (See id. at 3.) The trial court further stated that because Petitioner had maintained his innocence, even at sentencing, even if defense counsel had not advised Petitioner of his sentencing exposure, there was no reasonable probability that Petitioner would have pleaded guilty. (Id.) In sum, the trial court held Petitioner's ineffective assistance claim to be baseless and disingenuous. (See id. at 4.) Thereafter, pursuant to C.P.L. §§ 450.15 and 460.15, Petitioner moved the Second Department for leave to appeal the Section 440 Denial Order, which was denied by the Appellate Division on November 26, 2018. (See ECF No. 10-26.)

This Petition followed.

DISCUSSION

## I.   The Applicable Legal Standard

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002). Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court considering a claim that was decided on the merits in a state court proceeding may grant relief only if the state

court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1) & (2).

The AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 411 (2000); see also Virginia v. LeBlanc, 582 U.S. 91, 94, 96 (2017); McBride v. Perez, No. 13-CV-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'" (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  The requirements set forth by the AEDPA are strictly construed and, by design, erect a barrier to federal habeas relief founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the

laws of the United States." Burt v. Titlow, 571 U.S. 12, 19 (2013) (internal quotation marks and citation omitted).   The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011)).   Hence, a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  See Herrara v. Collins, 506 U.S. 390, 401 (1993).

Under § 2254(d)(1), applicable here, a state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."   Williams, 529 U.S. at 405-06.   "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"  Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (alteration in original) (quoting Williams, 529 U.S. at 412).  An "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Williams, 529 U.S. at 407-08.  "The critical

point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (internal quotation marks and citations omitted).  Ultimately, "the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F. 3d 408, 415 (2d Cir. 1997); see also Hawkins v. Costello, 460 F. 3d 238, 246 (2d Cir. 2006).

Assuming a petitioner's claims are cognizable on habeas review, a petitioner must exhaust state court remedies before coming to federal court.  Exhaustion of state court remedies requires that a petitioner fairly present the claim in state court, allowing the state court the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal

petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." <u>Daye v. Att'y Gen. of N.Y.</u>, 696 F.2d 186, 191-92 (2d Cir. 1982) (collecting cases).

Moreover, a federal court will not review a habeas petition if a petitioner's claims were decided at the state level on "independent and adequate" state procedural grounds. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). This procedural bar applies even if the state court addressed the merits in the alternative, but decided the claim on independent procedural grounds. <u>See</u> <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990). To obtain review of procedurally barred claims, a petitioner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence. <u>Coleman</u>, 501 U.S. at 750.

II. <u>Application</u>

In support of his Petition, Petitioner advances six claims: (1) the trial court violated his right to due process by denying his <u>Batson</u> challenge during jury selection; (2) the trial court's <u>Molineux</u> ruling violated his right to a fair trial; (3) the trial court violated his right to due process and a fair trial when it closed the courtroom; (4) the trial court's <u>Molineux</u> ruling violated the Confrontation Clause; (5) counsel provided ineffective assistance by failing to advise him of his sentencing

exposure; and (6) his sentence is excessive.  (See Petition at ECF pp. 6-21.)  The Court address each claim in turn.

A. The *Batson* Claim

Petitioner seeks habeas relief on the basis that the trial court's exclusion of a potential juror—who was allegedly challenged by the prosecution for racially motivated reasons—violated Batson.  (Petition at ECF pp. 6-8.)  In this instance, the argument is unavailing.

In Batson, the Supreme Court established a three-part test for a trial court to evaluate whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a prima facie showing that the circumstances give rise to an inference that a member of the venire was struck because of his or her race"; (2) "[i]f the party making the Batson challenge establishes a prima facie case, the trial court must require the nonmoving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination."  Galarza v. Keane, 252 F.3d 630, 635-36 (2d Cir. 2001) (citing Batson v. Kentucky, 476 U.S. 79, 96-98 (1986)).  "[W]hen reviewing a Batson challenge in the context of a habeas petition, a trial court's conclusion that

a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, <u>inter alia</u>, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record."  <u>Id</u>. at 635 (2d Cir. 2001).  Further:

> [o]n direct appellate review of a <u>Batson</u> ruling, we generally afford "great deference" to a district court's determination of discriminatory intent, because that question of fact often turns on the court's evaluation of witness credibility.  When a state trial court's <u>Batson</u> ruling is challenged under § 2254, our review is further limited by the [AEDPA], under which we will not identify constitutional error unless the record "compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications."

<u>Watson v. Ricks</u>, 427 F. App'x 60, 61 (2d Cir. 2011) (citations omitted).  "Throughout the <u>Batson</u> procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant."  <u>Messiah v. Duncan</u>, 435 F.3d 186, 195 (2d Cir. 2006).

Here, following the fourth round of <u>voir dire</u> of prospective jurors, the prosecution and defense counsel went through their respective challenges.  (Tr. 424:19-31:22.)  The prosecution and defense counsel made their challenges for jurors one through three, before discussing jurors four and five, which included Ms. Flores.  (Tr. 425:4-426:15.)  After the prosecution

exercised a peremptory challenge as to Ms. Flores, defense counsel raised a Batson challenge on the basis that all prior potential African-American jurors had been challenged by the prosecutor and Ms. Flores was now the only one sitting in the panel. (Tr. 426:19-427:5.)   Given that challenge, the trial court asked the prosecution for its nondiscriminatory reason for Ms. Flores' exclusion. (Tr. 427:8-9.)   The prosecutor responded that because Ms. Flores was the victim of spousal abuse who had opted not to call the police after a domestic incident, the prosecutor believed Ms. Flores would be too emotional to serve as a juror.  (Tr. 427:11-14.)   Additionally, the prosecutor stated that there was an African-American woman seated as a juror.  (Tr. 427:15-16.) Thereafter, the trial court stated its understanding that Ms. Flores was of Hispanic descent.  In response to the trial court's query whether defense counsel had a different view as to Ms. Flores' ethnicity, defense counsel stated his view was different but that he was "not going to make an issue out of it." (Tr. 427:17-21.)  Finding the prosecution indicated a nondiscriminatory reason for challenging Ms. Flores, the trial court denied the Batson challenge.  (Tr. 427:22-25.)

Petitioner did not preserve an objection to the trial court's Batson ruling.   See Smalls, 145 A.D.3d at 803 ("The defendant's remaining contentions are unpreserved for appellate review and we decline to review them in the exercise of our

interest of justice jurisdiction."). Such a failure "constitutes an independent and adequate state ground" which precludes a habeas court from considering a claim for relief. Rodriguez v. Schriver, 392 F.3d 505, 510 (2d Cir. 2004); see also Galarza v. Keane, 252 F.3d 630, 638 (2d Cir. 2001) ("[A] party must raise his or her Batson challenges in a manner that would allow a trial court to remedy the problem at trial"). Thus, having failed to preserve this claim for appellate review, Petitioner's Batson claim is procedurally barred. See Strzelecki v. Cunningham, No. 13-CV-0133, 2019 WL 6050404, *10 (E.D.N.Y. Nov. 15, 2019).

To overcome the procedural bar, Petitioner must demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Petitioner has not shown cause for the default and actual prejudice, or that failure to consider his Batson claim will result in a fundamental miscarriage of justice. In the absence of such a showing Petitioner cannot overcome this procedural bar. Even so, the Court finds that Petitioner's claim would fail on the merits.

On habeas review, the Court can find a constitutional error only where the record "compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications." Watson, 427 F. App'x

at 61.  Regarding the reasons given for excluding Ms. Flores, the prosecutor stated that she had been the victim of a crime of domestic abuse who did not seek police intervention, and, as a result, may be too emotional to serve as a juror.  Based upon this explanation, the trial court's conclusion that the prosecution's challenge of Ms. Flores was not exercised in a discriminatory manner is entitled to a presumption of correctness, which presumption Petitioner has not overcome. Compare, e.g., Mackenzie v. Portuondo, 208 F. Supp. 2d 302, 316 (E.D.N.Y. 2002) (finding petitioner failed to demonstrate that prosecution's peremptory challenge was pretextual where crime victimization was given as the race-neutral explanation).  Indeed, even if his claim was not procedurally barred, Petitioner has not demonstrated that the "state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence . . . and that the corresponding factual determination was 'objectively unreasonable' in light of the record."  Miller-El v. Cockrell, 537 U.S. 322, 348 (2005).  Accordingly, Petitioner's Batson claim does not warrant habeas relief.

   B. The *Molineux* Claim

        Petitioner claims he is entitled to habeas relief on the grounds that the trial court's Molineux decision violated his right to a fair trial.  (Petition at ECF pp. 10-11.)  The Court disagrees.

Pre-trial, the trial court ruled Petitioner's gang affiliation and his presence at TOP meetings as admissible evidence that provided appropriate background for the jury regarding the general workings of gangs, as well as Petitioner's motive, and instances of witness intimidation. This ruling was consistent with New York State law that evidence of prior bad acts by a criminal defendant is admissible "to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan . . . ; [and/or] (5) the identity of the person charged with the commission of the crime on trial." People v. Molineux, 168 N.Y. 264, 291 (1901); see also Sims v. Artus, No. 07-CV-6187, 2019 WL 3718024, at *6 (E.D.N.Y. Aug. 7, 2019) ("[T]his list is 'illustrative and not exhaustive,' and evidence of uncharged crimes that is necessary to provide 'background material' or to 'complete the narrative of the episode' may also be admissible.'" (citations omitted)). Pursuant to the trial court's Molineux ruling, the prosecution thereafter presented evidence explaining Petitioner's gang affiliation, the TOP meetings both before and after the shootings at the Club, the attempted shooting of Hester by Petitioner's brother during which Hester was called a "snitch" and a "rat", Petitioner's jail call threatening witness intimidation, and the activated caper alarm on May 3, 2012 at Jones's house. On appeal, the Second Department described the

trial court's <u>Molineux</u> ruling as "constitut[ing] a provident exercise of discretion," and rejected Petitioner's <u>Molineux</u> claim since "the evidence was admissible as relevant background material to explain to the jury the sequence of events and the relationship between the defendant and the decedent, and as evidence of the defendant's motive and intent, and his consciousness of guilt." <u>Smalls</u>, 145 A.D.3d at 802 (citations omitted).

Absent a showing that Petitioner's due process rights were denied such that he was deprived a fundamentally fair trial, the admissibility of evidence in state court is wholly a matter of state law and is therefore not subject to habeas relief. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 (1991). More specifically, "[a] habeas claim asserting a right to relief on <u>Molineux</u> grounds must rise to the level of constitutional violation . . . because <u>Molineux</u> is a state law issue." <u>Roldan v. Artuz</u>, 78 F. Supp. 2d 260, 276–77 (S.D.N.Y. 2000) (citations omitted); <u>see also</u> <u>Green v. Herbert</u>, No. 01-CV-1881, 2002 WL 1587133 at *12 (S.D.N.Y. July 18, 2002) ("The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional." (citations omitted)). Petitioner's <u>Molineux</u> claim simply does not present a federal constitutional issue since Petitioner has not shown how the trial court's <u>Molineux</u> ruling deprived him of a fundamentally

fair trial. See, e.g., Collins v. Scully, 775 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an evidentiary error deprived [a] defendant of due process . . . he must show that the error was so pervasive as to have denied him a fundamentally fair trial."). And, the Court agrees with Respondent that "[e]ven assuming, arguendo, that the trial court erroneously allowed prior-bad-act testimony, its ruling did not deny [P]etitioner a fair trial in view of the overwhelming evidence of guilt." (Opp'n at ECF p. 24 (citing Dowling v. United States, 493 U.S. 342, 346-47, 352-53 (1990) (harmless error analysis applied to improperly admitted evidence of other crimes); United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009)); listing further evidence presented to the jury, e.g., Petitioner's: "participation in the fight with, and the shooting of, Hartman from several eyewitnesses who were present in the [Club's] parking lot"; and "later twice bragged about [the shootings], according to two witnesses").) Hence, because there has been no showing that Petitioner was deprived a fundamentally fair trial, this claim fails to present grounds upon which to base federal habeas relief.[7]

---

[7] To the extent Petitioner also asserts a claim based upon the failure of the trial court to give a Molineux jury instruction, the Court agrees with Respondent that because Petitioner failed to preserve this issue for appellate review, it is barred from federal habeas review. (See Opp'n at ECP p.25 (quoting Smalls, 145 A.D.3d at 803).) See also Strzelecki, 2019 WL 6050404, *10 (discussing failure to exhaust a claim in state court bars a habeas petitioner from asserting that claim in federal court).

C. The Court Closure Claim

Petitioner claims that he is entitled to habeas relief on the grounds that the trial court improperly closed the courtroom during a portion of jury selection, thereby denying him his right to a fair trial.  (Petition at ECF pp. 12-13.)  Petitioner's claim was denied on appeal by the Appellate Division, because it was "unpreserved for appellate review"; thus, the appellate court declined to address the merits under its interest of justice jurisdiction.  Smalls, 145 A.D.3d at 803.  As such, the state court "expressly relied on a procedural default as an independent and adequate state ground" in denying Petitioner's unpreserved claim. Velasquez, 898 F.2d at 9; see also Strzelecki, 2019 WL 6050404, *10.

To overcome the procedural bar, Petitioner must demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  Petitioner has not shown cause for the default and actual prejudice, or that failure to consider his court closure claim will result in a fundamental miscarriage of justice.  Thus, Petitioner cannot overcome this procedural bar.

However, even were the Court to address Petitioner's claim on the merits, it would fail.  While it is well-established

that the right to a public trial is guaranteed by the Sixth Amendment, see Waller v. Georgia, 467 U.S. 39 (1984), and a criminal defendant's right to an open, public trial includes the jury selection process, see Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 509-10 (1984), the Second Circuit has held that a "trivial" or "insubstantial" courtroom closure does not warrant setting aside a conviction.  See Gibbons v. Savage, 555 F.3d 112, 121 (2d Cir. 2009) (exclusion of defendant's mother from one afternoon of jury selection "too trivial" for reversal); see also Carson v. Fischer, 421 F.3d 83, 95 (2d Cir. 2005) (habeas denied where "exclusion of Petitioner's ex-mother-in-law was not sufficiently substantial to implicate the Sixth Amendment").

The values underlying the Public Trial Clause are to: (1) ensure a fair trial; (2) remind the prosecutor and the judge of their responsibility to the accused; (3) encourage witnesses to come forward; and (4) discourage perjury.  See Waller, 467 U.S. at 46.  However, none of these values were substantially implicated here.  During jury selection, the trial court stated:

> For those spectators in the courtroom, we have
> 55 prospective jurors.  There are only 55
> seats in the courtroom.  This is, obviously,
> an open courtroom.  We are not excluding you
> from the proceedings, but the first order of
> business is the Court will determine those
> individuals who cannot sit for scheduling
> conflicts or any other reasons.  That will
> free up seats.  I'll ask you to leave at this
> point and we'll be back in ten or fifteen

> minutes.   You will not miss any of the
> proceedings.  You can step out.

(Tr. 430:22-431:8.)  The jury selection transcript does not include the trial court inviting the spectators back in; however, defense counsel did not raise an objection regarding the court's procedure. That, alone, is sufficient to foreclose federal habeas review.  As Respondent aptly states: "New York State law is clear that claims of error 'of constitutional dimension — including the right to a public trial — must be preserved.'  Petitioner's failure to make a record and preserve this issue for appellate review forecloses any possibility of federal habeas review of his claim."  (Opp'n at ECF p. 27 (quoting People v. Alvarez, 20 N.Y.3d 75, 81 (2012) (citations omitted)).)

Moreover, under the instant fact-pattern, the temporary exclusion of spectators while the trial court conducted the portion of voir dire involving scheduling conflicts, which appears to have been for a very brief period of time, is trivial and constitutes an insubstantial courtroom closure that does not implicate any of the four values articulated by the Supreme Court.  Thus, the minimal courtroom closure experienced by Petitioner during jury selection in his state court criminal case was inconsequential and did not cause Petitioner's Sixth Amendment right to a public trial to be violated.  Therefore, Petitioner's court closure claim fails to support the granting of habeas relief.

D. The Confrontation Clause Claim

Petitioner seeks habeas relief on the ground that his Sixth Amendment right to confront witnesses against him was violated after Nill was permitted to testify regarding a caper alarm being activated at the Jones residence, but Jones did not testify at trial. (Petition at ECF pp. 15-16.) For the following reasons, this claim is denied.

Petitioner raised his Confrontation Clause claim on direct appeal, but the Appellate Division rejected considering it because the claim was "unpreserved for appellate review." Smalls, 145 A.D. 3d at 803. It implicitly relied upon New York State's preservation doctrine, codified in N.Y.C.P.L. § 470.05(2), which is a procedural rule that is firmly established and regularly followed in the state. See generally Garvey v. Duncan, 485 F.3d 709 (2d Cir. 2007); see also, e.g., Silva v. Keyser, 271 F. Supp. 3d 527, 542 (S.D.N.Y. 2017). Thus, because the Appellate Division's ruling rejecting Petitioner's Confrontation Clause claim was independent of federal constitutional law and adequate to support the judgment, federal habeas review is not available unless Petitioner can show cause, prejudice, or that a fundamental miscarriage of justice would result if he is barred from habeas review. Since Petitioner has failed to make that requisite showing, he cannot overcome this procedural bar. See Coleman, 501 U.S. at 750.

Nonetheless, if the Court were to address Petitioner's Confrontation Clause claim on the merits, it would not warrant habeas relief.  A criminal defendant has a right, guaranteed by the Sixth Amendment to the Constitution,[8] "to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination."  United States v. Jass, 569 F.3d 47, 55 (2d Cir. 2009) (quoting Ryan v. Miller, 303 F.3d 231, 247 (2d Cir.2002)).  To determine whether the Confrontation Clause was violated by the admission of Nill's testimony regarding the caper alarm, the inquiry "begins with the questions of whether the statements are testimonial."  United States v. Sagat, 377 F.3d 223, 227 (2d Cir. 2004).  Where statements are non-testimonial, their admission into evidence at trial does not violate the Confrontation Clause if the statements "fall within a firmly rooted hearsay exception or demonstrate particularized guarantees of trustworthiness."  Id. at 227.

Here, Nill did not testify to statements made by Jones, and, as such, the Confrontation Clause is not implicated.  Nill's

---

[8] See Pointer v. Texas, 380 U.S. 400, 401 (1965) (holding Sixth Amendment Confrontation Clause is made applicable to the states by Fourteenth Amendment).

testimony detailed his investigation upon responding to the activated caper alarm at Jones's residence.  While he testified that he spoke to Jones, he did not detail the contents of their conversation.  The Detective did testify that, in his investigation, he sought an individual matching a certain description.  However, because reference to Jones's statements were not being offered for their truth, they do not implicate Confrontation Clause concerns.  See, e.g., Michigan v. Bryant, 562 U.S. 344 (2011) (finding statements regarding the identification and description of a shooter were not testimonial, but were to enable police assistance to meet an ongoing emergency, and, thus, did not violate the Confrontation Clause).

Further, "even assuming arguendo that petitioner's Confrontation Clause rights were violated . . . such a violation is subject to harmless error review."  Sims v. Artus, No. 17-CV-6187, 2019 WL 3718024, at *8 (E.D.N.Y. Aug. 7, 2019); see also United States v. Caraballo, 658 F. App'x 595, 598-99 (2d Cir. 2016).  "[O]n habeas review of a state conviction, a constitutional error will be considered harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  Black v. Griffin, No. 15-CV-8112, 2019 WL 2551685, at *28 (S.D.N.Y. Jan. 14, 2019) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)), report and recommendation adopted, 2019 WL 2548132 (S.D.N.Y. June 20, 2019)).  Here, the overwhelming evidence,

presented through the testimony of witnesses who testified at the trial and were subject to cross-examination, established Petitioner's guilt.  Thus, in the overall context of the trial and considering the overwhelming evidence of Petitioner's guilt, Nill's testimony regarding the caper alarm, which did not implicate Petitioner in any criminal wrongdoing, was unlikely to have had a "substantial . . . influence in determining the jury's verdict." Hence, Petitioner cannot establish that his Sixth Amendment rights were violated by Nill's testimony.  As a result, this claim would not support habeas relief.

E. <u>The Ineffective Assistance Claim</u>

Petitioner asserts that he is entitled to habeas relief on the ground that defense counsel provided ineffective assistance when he misadvised Petitioner not to plead guilty to the charges before trial.  (Petition at ECF p. 18.)  Petitioner argues that defense counsel failed to advise him that should he be found guilty on all counts, he could be sentenced to consecutive sentences, thereby increasing his sentencing exposure.  (<u>Id.</u>)  Petitioner maintains that, but for counsel's advice, he would have accepted the prosecution's pre-trial plea offer of 20 years' incarceration. (<u>Id.</u>)

Petitioner raised this claim in his Section 440 Motion, which the trial court denied, finding Petitioner's allegation of ineffective assistance of counsel to be untrue:

> Here, this Court does not find Defendant's
> claim that he was not advised of his
> sentencing exposure credible. Notably, now –
> approximately five years after sentence –
> Defendant seeks relief based on facts known to
> Defendant (at the latest) since the date of
> sentence. In fact, the record reflects that
> defendant continually maintained his
> innocence, even at sentencing. This Court
> concludes that trial counsel did in fact
> advise Defendant of his sentencing exposure,
> including the possibility of consecutive
> sentences. Further, even if arguendo, trial
> counsel had not advised the Defendant of his
> possible exposure to consecutive sentences,
> there is no reasonable probability that
> Defendant would have taken the plea offer.

(Section 440 Denial Order at 3.) Petitioner appealed the Section 440 Denial Order, which the Appellate Division denied; therefore, this claim is properly exhausted. However, the Court finds the Section 440 Denial Order was not contrary to, or an unreasonable application of, clearly established federal law.

To establish deficient performance, a petitioner must prove that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). But even if the petitioner can show deficient performance, he must also establish prejudice--that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Further, as a general principle, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. After all,

"there are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id.

In the context of a habeas petition, in reviewing the totality of the evidence, the habeas court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)). Bearing this deferential standard in mind, it is unsurprising that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail. Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

Further framing the issue of effective representation to instances involving plea negotiations and plea offers: "[C]ounsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). Additionally, "defense counsel 'must give the client the benefit of counsel's professional advice on this crucial decision' of whether to plead guilty." Purdy v. United States, 208 F.3d 41, 44 (2d Cir.2000) (quoting Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996)). An attorney "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."

Id. at 45.  However, "the ultimate decision whether to plead guilty must be made by the defendant," and a "lawyer must take care not to coerce a client into either accepting or rejecting a plea offer."  Id.

Petitioner contends that his counsel failed to advise him that he faced exposure to consecutive sentences if he rejected the plea offer of 20-years' incarceration and proceeded to trial. (Petition at ECF p. 18.)  In response to Petitioner's Section 440 Motion, defense counsel provided an affidavit detailing his plea discussions with Petitioner.  (Lemke Aff., ECF No. 10-21, at ECF pp. 14-17.)  Therein, defense counsel affirmed, inter alia, that: it is "always and without exception" his practice to advise his clients concerning plea negotiations and plea offers; consistent with this practice, he spoke with Petitioner about any and all plea offers and possible sentence ranges if convicted; he discussed the State's plea offer, which included a recommended sentence of 20-years' incarceration, numerous times with Petitioner; he explained to Petitioner the difference between concurrent and consecutive sentences to ensure Petitioner had "the ability to grasp the seriousness" of his situation; he discussed with Petitioner that, if convicted, Petitioner faced consecutive sentences; and, Petitioner made the decision to reject the plea offer.  (Id. ¶¶ 6-9.)  Contrary to Petitioner's assertions, the record evidence establishes his defense counsel fulfilled his

professional obligation by conveying to Petitioner the terms of the State's plea offer and discussing with Petitioner his sentencing exposure at the time the plea offer was made and throughout the pre-trial process; therefore, the Section 440 Denial Order is presumed to be correct. See 28 U.S.C. § 2254(e)(1) (stating "a determination of a factual issue made by a State court shall be presumed to be correct"). Petitioner has not put forth clear and convincing evidence to rebut that presumption. See id. (stating further that petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"). Upon said record, defense counsel's assistance to Petitioner comfortably fell within the objectively reasonable range of assistance to which Petitioner was entitled as articulated in Strickland. 466 U.S. at 689. Thus, the trial court's Section 440 Denial Order finding that defense counsel's performance was not deficient was not contrary to, or an unreasonable application of, clearly established federal law.

Additionally, to demonstrate prejudice caused by counsel's ineffective assistance "where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier offer had they been afforded effective assistance of counsel." Frye, 566 U.S. at 147. Here, the record demonstrates that Petitioner has maintained his innocence. (See,

e.g., Sent'g Tr. 10:8-10; see also Lemke Aff. ¶¶ 5, 7; Section 440
Denial Order at 3.)   Accordingly, it is highly unlikely that, but
for defense counsel's advice, Petitioner would have accepted a
guilty plea prior to trial; as such, Petitioner cannot show
prejudice.   Hence, having failed to satisfy either the deficient
performance or prejudice prongs of Strickland's constitutional
test for ineffective assistance of counsel, Petitioner's claim
seeking habeas relief on this basis fails.

    F. The Harsh and Excessive Sentence Claim

       Petitioner contends that his sentence constituting an
aggregate of 47-years-to-life of imprisonment followed by eight
years of post-release supervision is harsh and excessive, thereby
entitling him to habeas relief. (See Petition at ECF p. 21.)  Not
so.

       It is well-settled that an excessive sentence claim,
such as Petitioner's, does not present a required federal
constitutional issue when the sentence received "is within the
range prescribed by state law."   White v. Keane, 969 F.2d 1381,
1383 (2d Cir. 1992); see also Taylor v. Connelly, 18 F. Supp. 3d
242, 268 (E.D.N.Y. 2014).   Under New York state law: (1) the
maximum sentence permitted for a violation of Murder in the Second
Degree, a Class "B" Felony, is a term of imprisonment of 25 years,
see N.Y. Penal Law §§ 125.25(1), 70.00(2)(b); (2) the maximum
sentence permitted for a violation of Assault in the Second Degree,

a Class "D" violent Felony, is a term of imprisonment of seven years, see N.Y. Penal Law §§ 120.05(2), 70.00(2)(b); and (3) the maximum sentence permitted for a violation of Criminal Possession of a Weapon, a Class "C" violent Felony, is term of imprisonment of 15 years, see N.Y. Penal Law §§ 265.03(3), 70.00(2)(b).  Thus, Petitioner's sentence of: (a) 25-years-to-life imprisonment for Murder in the Second Degree; (b) seven years' imprisonment and three years' post-release supervision for Assault in the Second Degree; and (c) 15 years' imprisonment and five years' post-release supervision for Criminal Possession of a Weapon in the Second Degree, falls within what is permitted by applicable statute and does not present a federal constitutional issue.  Further, under New York law, consecutive sentences are permissible where the evidence establishes that the acts underlying the crimes were separate or distinct.  See People v. Ramirez, 89 N.Y.2d 444, 451 (1996).  Here, the evidence demonstrated that the two victims were shot by separate bullets, which resulted in injuries resulting from separate and distinct acts.  Therefore, Petitioner's harsh and excessive sentence claim is without merit and is denied habeas relief.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

I.   Petitioner's Petition (ECF No. 1) is **DENIED**;

36

II.   The Court declines to issue a certificate of appealability because the Petitioner has not made a substantial showing that he was denied a constitutional right.  See 28 U.S.C. § 2253(c)(2);

III.  The Court certifies that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

IV.   The Clerk of the Court is to:

A. close this case; and

B. mail a copy of this Order to the pro se litigant, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

_/s/_JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:  May 12, 2023
        Central Islip, New York